We'll hear argument first this morning in Case 09-10245, Freeman v. United States. Mr. Heffner. Mr. Chief Justice, and may it please the Court, William Freeman's plea agreement, his pre-sentence report, and the sentencing record all show that his term of imprisonment was based on a crack cocaine guideline that was retroactively lowered by the United States Sentencing Commission. This case asked the Court to decide whether the fact that a sentencing court accepted a plea agreement under Criminal Rule 11c1c precludes eligibility for a sentence reduction under Section 3582c2. We submit that Mr. Freeman is not barred from eligibility for a c2 sentence reduction for several reasons. First, under the ordinary definition of based upon, and in the context of this particular statute, since the subsequently lowered guideline was used to determine Mr. Freeman's term of imprisonment, that term of imprisonment was based on the subsequently lowered guideline. Second, the categorical ban on eligibility adopted by the Sixth Circuit and advanced by the government frustrates the purpose underlying Section c2 and finds no support in the plain language of the statute, of the rule, and under the terms of Mr. Freeman's plea agreement. Third, a record-based analysis that reviews the plea agreement, the pre-sentence report, and the sentencing record for it to determine the basis of the sentence is best suited to correctly implement Section c2. And that record-based analysis supports the conclusion that Mr. Freeman's sentence was indeed based on a retroactively lowered guideline. The Sixth Circuit view. Roberts If we issue an opinion and we analyze the statute's language, the statute's purpose, and the statute's legislative history, would the opinion, the judgment, be based on each of those or not? In other words, does everything that goes into the final determination, would you say that determination is based on each of those factors individually? Yes, I mean, certainly it is the determination certainly would be based on the statute, Your Honor. But as we've argued in our brief, we've asked the Court to take what we believe to be a record-based analysis and determine, look at the record in this case, look at the terms of the plea agreement, look at the other terms of the plea agreement. Roberts No, I think my question goes in a different direction. This plea agreement, I think, could be said to be based on the sentencing guidelines, but it's also based on the agreement. In other words, the combination of the two of them is what gives you the sentence. So how can you say it's based on only the sentencing guidelines when it may not have been imposed in the absence of the plea agreement? It probably wouldn't have been. Mr. Chief Justice, we don't believe that that's mutually exclusive. A sentence can be a guideline, a sentence based on the guidelines, and it can be a sentence based on a C plea agreement. Alito But you quote one definition of the noun base in your brief, uses a point from which something can develop. But you omit another standard definition of the term, the principal element or ingredient of anything considered as its fundamental part. Why do you do that? Roberts Well, Your Honor, I think that the dictionary definition that we have given encompasses both the definition that Your Honor has just described. The opposition Alito There are two different definitions. One is something that provides a starting point for analysis. The other is the fundamental thing on which something is rests. Roberts Well, our contention is that Alito You use the latter definition, you have to decide which is more fundamental here, the agreement between the parties or the sentencing guidelines, which certainly provided the starting point for the analysis of the sentence by the district court. Roberts Justice Alito, that's correct. The guidelines certainly were the starting point, but they were also the principal foundation of this agreement. Because what the agreement is, is Ginsburg Isn't it enough for you to say, or based not in whole, but in part, based on something that could be based on several things, and one of them is the guidelines that then  Roberts Certainly. Certainly. And this plea agreement reflects that it was based on the guidelines. Roberts Well, then are you saying the plea agreement was based on the fact that he was caught with two guns rather than four guns? Would you be willing to say that? In other words, everything your position, it seems to me, could be criticized for saying everything that contributes to the final 106 months, that that sentence is based on every one of those things, which makes the statutory language largely meaningless. Roberts Well, Your Honor, the sentence is based on a number of guidelines. Each sentence is based on just one guideline, as this plea agreement reflects. It's based on a compilation of guidelines. It's based on the crack guidelines, and as part of the statute, it's based on a number of guidelines, and as part of the statute, it's based on a number of guidelines. Roberts Well, it's also based on things that are not reflected in the guidelines. You've got a particular U.S. attorney who's more lenient in prosecuting these types of crimes than another one. The fact that you've got the minimum under the guidelines might be based on that. It's based on the fact that this person felt he could handle 106 months in prison, and he wasn't willing to risk whatever the top – what was the top sentence under the guideline calculation? Roberts It would have been 117 months. Roberts So he figures it's better for me to get that. It's based on his decision that 106 months is better than the risk of 117. Roberts Well, certainly there are a number of factors that go into plea bargaining and negotiation. But I think what the Court has to look at is what is said in that plea agreement. And I think, as Justice Ginsburg pointed out a minute ago, the definition of based on, if a guideline sentence is – if a sentence is based in part on the guidelines, that would be adequate under the sentence. Roberts What sentence would he have gotten if he were just sentenced under the guidelines? No plea agreement. Roberts He would have got the – he would have received the same sentence, Your Honor. Roberts Well, how do we know that? Guidelines give you a range. The judge might have given him 117 months. Roberts But the plea agreement here was for the bottom of the guidelines. The parties calculated that.  No, no, I know. I'm putting aside the plea agreement. What would he have gotten under the sentencing guidelines? We don't know, right? Roberts It would have been left – well, assume – it depends upon the nature of the plea, Your Honor. You're talking about – Roberts There's no plea. He's convicted at trial. Roberts It would be somewhere within that guideline range. That's correct. Roberts So how can you say that this is based on the guideline range when the guideline range would not have been determinative? Roberts Well, we're looking at the content of the plea agreement, Your Honor. The plea agreement said – Roberts I know, but my hypothetical is in a different context.  But even at that, Your Honor, if that sentence ultimately is going to be based on a guideline range, and if that guideline range is subsequently lowered by the sentencing commission, then the – Sotomayor Counsel, could you – maybe it would be easier if you would describe to us the situations you don't think would be based on the guidelines. The Solicitor General claims that since every plea negotiation has to start with the guideline calculation as a starting point for departure and or consideration by the judge under 6b-1, that every C plea agreement would be considered based on. Are you taking that position?  No, Your Honor, absolutely not. Sotomayor All right. So I'll give you a couple of examples, but you give me more. Would a plea agreement that doesn't mention the guidelines at all, but picks a sentence within the actual guideline, is that based on the guideline? Roberts Possibly, Your Honor. Sotomayor All right. And how about one that departs or varies from the guideline range, whichever word you want to use? Roberts Your Honor, the sentencing commission in 1b-110, note 3, says that a below-guideline sentence can be based on the guideline. Sotomayor So the Solicitor General is right. There really isn't any situation that you're claiming is not based on. Roberts Oh, no, Your Honor. There are C pleas. Sotomayor Give me the examples. Roberts All right. Well, first of all, we've cited cases in our brief where circuit courts have determined that a C plea was not based on the guidelines. But let me give you another example. Let's just assume that the guideline range is something like 151 to 188 months. And then, but the parties agree to a sentence of 60 months. And they do that for several reasons. First of all, maybe the defendant is elderly. Maybe the defendant has serious medical conditions. Maybe the defendant was sexually abused as a child. If those are the factors, if that's the reason why the defendant got that, received that 60-month sentence, that sentence is not based on the guideline range. Alito Well, wouldn't the guidelines, even in that situation, provide the starting point for analysis? Isn't the district court obligated and isn't the pre-sentence report have to go through the guidelines calculation before the sentence is imposed? So you start out with the guideline sentence of whatever the figure was that you mentioned, and then you go from there, and maybe you depart downward. Roberts That's true. The guidelines would be the starting point of any negotiations. Alito So why wouldn't that be based on the guidelines, just because there's such a big downward departure? Roberts Your Honor, it would not be based on the guidelines if those other factors were the motivating reason for the imposition of the sentence. Breyer Sorry, I don't understand that. Don't the guidelines provide for departures? Roberts They do, Your Honor. Breyer Well, and aren't you giving a guideline sentence? If you give your reasons, as is required by the Sentencing Commission in 6b.1.2, and you say, the judge says, I think this is a special case, and therefore I'm giving a lower sentence, just as he's required to do under the guidelines in order to accept a C-type agreement. Roberts If the parties can show that the sentence is tied to the guidelines. Breyer Well, how could it not be? Wouldn't the judge have to say, it's not tied to the guidelines because I am varying and I no longer wish to apply the guideline? If he doesn't say that, isn't he applying the guideline? In that instance, he would be applying it. Breyer Whether he gives the specific robbery, 3-point, whatever it is, 17 months, or whether he says, I have a special case and I depart under section 5 of the guidelines, both of those are guideline sentences, aren't they? Roberts If the judge were to take, were to actually apply those guidelines and say, based on that guideline, I am going to depart, that sentence is based on the guidelines. Sotomayor So from what base does a judge depart downward? From the crack cocaine range or from the downward departure range? Roberts I think it would depend on the nature of the agreement, Your Honor. It may very well depend on the judge may depart from the crack cocaine. Sotomayor So aren't you just asking us to permit district court judges to make up their own C agreement, to decide what the parties would have done in the absence of a higher range? And don't we fall prey to sort of just create, asking district court judges to create their own agreements? Roberts No, Your Honor. I don't believe that's what we're asking the court to do at all. Ginsburg Mr. Heft, are you relying on the ---- this was a plea agreement that said specifically defendant agrees to have his sentence determined pursuant to the guidelines, and then the judge said that he was adopting the probation report, and the application of the guidelines as set out therein. So both the defendant says, I agree to a determination pursuant to the guidelines, and the judge said, I'm going to apply the guidelines in giving you your sentence. So the hypotheticals we're talking about are quite far afield from where you have a specific statement by the defendant and the sentencing judge that the guidelines are being applied. That's correct, Your Honor, and that's why we've asked the court not to take a categorical approach to this issue, but to take either a case-by-case approach or a record-based analysis to allow the district judge to determine, as Justice Ginsburg pointed out, what are, you know, what is the ---- Kagan And, Mr. Heft, would you require those kinds of statements in the agreement or in the colloquy in order to satisfy the standard? Suppose those statements just didn't exist. That's certainly problematic, Justice Kagan. If those ---- if there was nothing in that plea agreement to tie the sentence to the ---- the agreed sentence to the guidelines, that certainly would be problematic. But that doesn't resolve the issue one way or the other, because the judge would have to consider the pre-sentence report to see if there's a connection or correlation between the agreed sentence and the guidelines, and also the judge could look at the guilty plea colloquy and the sentencing transcript to see if the attorneys actually expressed their intent about where this sentence came from.  Kagan So, Mr. Heft, this seems very complicated. You have to look at everything, and you're not giving us a lot of guidance as to what you do when you see these things. I mean, this sort of case-by-case, all-things-considered approach just seems as though you're going to get a lot of inconsistent decisions. Heft Respectfully, Your Honor, I disagree. I think this is what district judges do all the time, not just in the context of a C plea, but a B plea as well. They have to look at the nature of the plea agreement. They have to look at the PSR. They have to look at the sentencing transcript to determine whether or not the defendant is eligible for that sentence reduction. So judges are doing this routinely. They're doing it. Alito In every case, they have to go through the guidelines calculation, and the parties have the opportunity to object to the calculation, right? Heft Yes, Your Honor. Alito So what does paragraph 12 of the plea agreement contribute here, other than with respect to the fine and things besides the sentence that we're talking about? It doesn't seem to me to add anything substantively. Heft Well, Your Honor, I think it does, Justice Alito. I think it does add substance and it adds meaning to that plea agreement, because in paragraph 11, where the parties very meticulously go through the offense level, tie that to the guidelines, and then they state in paragraph 12, the defendant agrees to be sentenced pursuant to the guidelines, that's very clear that the review and the guideline calculation is what the sentence is based on. Scalia Can a sentencing judge be found to have abused his or her discretion in approving a plea, a C plea agreement, which provides for less than the minimum guideline sentence and gives no particular reason for that? Would that be appealable as an invalid sentence? Heft Well, Your Honor, under section 3742, the government could appeal an incorrect application of the guidelines, if that's what Your Honor is referring to. Ginsburg But now you're talking about a plea agreement, so the government has consented to whatever this agreement is, and were there at some times a plea agreement will say, okay, if you take a plea, we'll drop certain charges, or we'll charge a smaller volume of the drug. Was there any of that in this plea? Heft No, Your Honor, in all charges in the indictment, the party stipulated the amount of drugs that were found on this person when he was arrested. So there were no dismissed charges, no amended charges in this plea agreement. Scalia Let me ask my question a different way. In deciding whether to approve the plea agreement, doesn't the judge have to consider whether it is an application of the guidelines, whether it is wildly inconsistent with the guidelines, whether it does not take into account valid reasons for departure from the guidelines? Heft Yes, the judge would have to consider the guidelines. Scalia Then, if that's the case, then every plea agreement is based on the guidelines, every single one, because the judge always has to consider how do the guidelines apply to this plea agreement. Heft Well, Justice Scalia, consideration of the guidelines alone is not enough to determine whether or not that sentence is actually based on the guidelines. Breyer I don't understand why you resist that. I mean, that's precisely what the guidelines say. The only ones that aren't guideline sentences are dismissal charges, where it's an agreement to dismiss. But a Type B, Type C, the guidelines themselves say that the judge, here's what you do. Judge, you look and see if the guideline sentence is there. Is it a guideline sentence? If it is, you can approve it. If it isn't, you can't. I mean, that's my reading of what it says. So why do you resist that conclusion? Of course, the judge now could depart from the guidelines. I mean, vary, whatever that word, technical word is, vary, he can say I'm not going to apply the guidelines at all. But if he is going to apply the guidelines, isn't that what they tell him to do? I've always thought that, and you may tell me I'm mistaken. Scalia They do, obviously, they do consider the guidelines. But then the other question is whether or not the sentence is based on those guidelines. Breyer Well, how could it not be, since the judge has no power, if he is to apply the guidelines, to accept any agreement other than agreement that corresponds with the guideline? That's what it says. It says the Court should accept a recommended sentence or a C, the specific sentence, only if the Court is satisfied either that it is within the applicable guideline range or if it's based on a departure under the guidelines. That seems to me what it says. Isn't that what it says?  That's what it says, Your Honor. Breyer Okay. Then if that's so, every sentence is? You're going to say no? I mean, I thought that was helping you, but if you want to say no, go say no and explain why that is. Scalia Your Honor, to go back to the point that Justice Sotomayor made with the hypotheticals, there still can be C pleas that are not based on the guidelines. Breyer How? Give me an example. Scalia Well, the example that I gave previously, there's a guideline range. But the judge bases his decision, his or her decision, solely on other factors other than the guidelines, as I mentioned earlier. Breyer You're supposed to psychoanalyze the judge? The judge says on his writing, checks the box, this is a guideline sentence. It is robbery. It is precisely within the robbery range. But I am going to give it the low end of the range because I believe that the he has a lovely mother and family and so forth. Okay? You're saying that isn't based on the guideline? Okay. Is that the point?  Well, it depends what the judge does at sentencing, Your Honor. Breyer What he does is he applies the guideline sentence. He has to do that. Now, within that range, he's applied the guideline sentence, he got the information, he says I'm satisfied it applies, done. Now, are we supposed to look further and say what his true reason is? Is that what you're saying? Scalia It would, Your Honor, I would submit it would depend on the nature of the plea agreement whether or not that sentence is actually based, going to be based on the guidelines. Scalia Incidentally, and it sort of bears upon this discussion, are the guidelines mandatory when they are applied in approving a plea agreement? In other words, does Booker, Fan, Fan not apply to the application of the guidelines when a judge is approving a plea agreement? You think the guidelines are mandatory in that situation? No, Your Honor. They're still in place. Breyer You were just at the very point when we decided, Booker, is that right? It was your sentencing took place in July 2005 and we came out with Booker in? Scalia I believe it was March of 2005. Breyer All right. So it's quite possible the judge wasn't totally, but I mean, I agree it's much more complicated after Booker. I don't know how to treat yours. Scalia That's true. Breyer If the government in connection with this plea agreement had dropped counts or had decided not to seek a superseding indictment, adding counts, would the situation be the same? Scalia Yes, Your Honor. I think it would be the same, because the court would have to look at, again, what the terms of the plea agreement was and what the parties determined. Now, the — I think what I should emphasize is that we're only talking about eligibility here. And if those concessions that the government has made would perhaps result, or at least in the government's view, result in an unjustified windfall, that is not a critical factor in determining eligibility. That's not a factor at all in determining eligibility. That could come into play after eligibility is determined and the district judge determines whether or how much. Alito How would that possibly work? Let's say the government drops counts, agrees to a plea on count 1 with a guideline range of 60 to 65 months, drops count 2, which would have increased the guideline range to, let's say, 100 to 105 months, and says, this is our deal. You know, you agree to 65 months and we're going to drop count 2, all right? And then the guideline for that is lowered, and you say in determining whether the defendant is eligible, the government would then have to have a mini-trial and prove count 2? No, no, no, no. How would it work? It would work assuming that the defendant is eligible, the case is remanded to district court. As in this case, there would be a recalculation of the guidelines to determine if the guideline range would be reduced. And then as the district judge in this case said, if you have objections, let me know. File your objections. That's where the government could file. Alito The government files its objections and says, well, we dropped count 2, and the defendant says, well, I wasn't guilty of count 2. That's up to the district judge's discretion whether or not to reduce that amended guideline sentence. How is the judge going to decide that? Carvin Well, I think that's something that district judges decide every day, whether or not. Because the judge presumably has been, is familiar with the case, with the pre-sentence report, with the terms of the original plea agreement, with the facts of the case. And the judge can make an assessment based on those factors whether or not the sentence reduction should be granted, and if so, how much of a reduction should be granted. Scalia Justice Alito's hypothetical points out, points up the fact that even though the agreement may mention the guidelines, it may do that just for the purpose of enabling the judge more readily to approve the agreement. But there's no reason to believe that the government is interested in the guidelines, as opposed to being interested in putting this person away for a certain amount of time, especially when another count is dropped. And the government says, well, you know, I'll drop it if this guy goes to prison for 2 years. But if the government had known he's not going for 2 years, he's only going for a year and a half or a year, the agreement might not have been concluded. So it really, I mean, it doesn't further the intent of both parties, at least, to say when the guideline is changed, the agreement changes. Well, the agreement certainly has been modified by the amended guideline, and that's where the district judge has to exercise his or her discretion whether or not to grant that reduction. But in that event, the sweet part would be open to reconsideration, too. Ginsburg. I mean, you can't say, I want the good part, the lowered guideline, but I also want to keep that certain counts were dropped, and that a certain quantity of drugs was agreed upon. You would have to reopen the whole thing, wouldn't you? No, Justice Ginsburg, I don't think you'd have to reopen the case. Again, I think the judge could look at the pre-sentence report. The government could make its objection, saying here's why we gave that particular sentence. And the judge could exercise his or her discretion to say whether or not the defendant is going to get that sentence reduction. Thank you, counsel. Thank you, Your Honor. Mr. Gannon. Mr. Chief Justice, and may it please the Court. When a criminal defendant and the government agree to a specific sentence, and that agreement is binding on the sentencing judge by virtue of Rule 11c1c, the resulting sentence is based on the party's agreement. It is not based on the advisory guideline range that would otherwise have been used at sentencing, even if the sentence corresponds to that range. Counsel. Well, here the agreement at various points says that the parties agree on the calculation of the guideline. I think that's paragraph 11 and 12. They say the sentence is according to the guideline. So there's reference to the guidelines throughout, and the Court made the guidelines calculation. The Court certainly made the case. It seems to me fair under the statute to say that it's based on the guidelines. Well, the question is other provisions in the agreement you might argue about. Well, I think the statutory question here isn't just whether the sentence is based on the guidelines. The language under 3582c2 is whether the defendant was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the commission. So it's not just whether the guidelines played a role. It's whether this particular sentencing range was what was driving the sentence. And, Justice Kennedy, you point out pages 25, 26 of the plea agreement in the joint appendix. And I think it's instructive that the agreement deals differently with the fine component, as Justice Alito referred to earlier, than it does with the term of imprisonment. At the bottom of page 25, the agreement says that a fine will be at the lowest end of the applicable guideline range. And then if you go over to pages 27 and 28 in paragraph 11, that's where the guideline calculation occurs. And notice it's an incomplete calculation. The parties don't actually come up with a final calculation because they don't come up with a criminal history. They don't do it. Kennedy, Well, they do come up with a recommendation, which is three levels below the otherwise applicable guideline. They come up with a recommendation for purposes of determining the offense level, the base offense level, 22 and then reduce to 19. Kennedy, Yes, but that's all based on the guidelines. Well, that aspect is based on the guidelines, but then the guideline application computation is incomplete because the next paragraph, paragraph B, says we aren't agreed on what the criminal history is going to be. And the next paragraph, paragraph C, specifically says that the foregoing statements of applicability of sections of the sentencing guidelines are not binding upon the court. The defendant understands the court will independently calculate the guidelines at sentencing. Kennedy, But that doesn't mean that the court can't base its conclusion on his independent – on its independent judgment on the guidelines. Well, I think what I'm trying to say, Justice Kennedy, is the agreement expressly contemplates that the judge needs to determine the applicable guideline range for purposes of determining what the fine will be, and that's different from the way the plea agreement deals with the term of imprisonment. Because if we go back to page 26, it does not tie the term of imprisonment to a guideline range. That's completely different from the way it deals with a fine. It specifically says there's an agreement that the sentence of 106 months of incarceration is the appropriate amount. And so that happens to have been at the bottom end of the guideline range that would have been applicable if the party's agreement, if the party's prediction about the likely criminal history calculation turned out to be the right one. Kennedy, Well, you're talking about what based on means, and that's an important part of your argument. If I can just, while I've got you, jump to this question of what happens on remand if you lose the case. On remand, I take it you're not bound by the agreement because of the last, the last of section 24, so the defendant argues for any sentence other than the one to which he has agreed he's going to breach the agreement? Well, at that point, the remedy for the breach would be that the United States is relieved of its obligations under the agreement. Kennedy, What would you, what would that mean? Well, I think that's part of the problem in a case like this where there was a specific sentence agreement, that it's impossible for the government to get back the things that it gave up at the time that it agreed to 106. Kennedy, Well, it got guilty pleas on all of the counts. We know that. Well, but it also. Kennedy, In your position, in your view, would the government be able to take the position that the guilty pleas stay in place, but it now wants maximum? Well, I think that that would not. Maximum guidelines. I don't think that 3582c2 contemplates that the sentence will be increased. The only thing is the Court held until it lasts. Kennedy, Well, yes, except that the agreement does. The agreement relieves you of any obligation. I see what you mean. I mean, now that the sentence has become final, I think 3582c2 has opened a narrow window for ways in which the otherwise final sentence could be modified. It only contemplates that the judge will have the discretion to reduce the sentence if it is, first, a sentence that was based on the relevant guideline range that's subsequently been amended and made retroactively applicable, but also, second, then the judge would need to comply with a policy statement that appears in 1B1.10 of the Federal Guidelines. Kennedy, So you say the judgment's final, so the fact that the plea — that there's a breach of the plea agreement is irrelevant at this point? Maximum Guidelines, Well, I think that the remedy that the agreement contemplates of the government being released from its other obligations in the plea doesn't really leave us much of an option at this point. We're not going to be able to go back and argue that he should have been sentenced at the upper end of the range that we're talking about. We're not going to be arguing that the criminal history should have been a higher or that the criminal history substantially underrepresented the seriousness of his history, where he had 10 years of offenses preceding this one. There may have even been a potential career offender adjustment that went by the boards. That's mentioned on page 162 of the Joint Appendix. Scalia, Mr. Gannon, you assert that the — within the language of the statutory provision, the sentence here is not based on the Guidelines, but it's based on the agreement. And the agreement, arguably, is based on the Guidelines. Gannon, I think the agreement is arguably — I mean, I don't think the face of this agreement proves that it's based on the Guidelines, but I — it is obvious that the parties negotiated in the shadow of the Guidelines. Scalia, if you take that position, that based on means determined by absolutely, then I don't think any sentence would ever be based on the Guidelines after Booker Fanfan. Gannon, well, it's — Scalia, I mean, the Guidelines form part of the consideration of the judge, but the judge's decision is not based on the Guidelines. Just as here, the agreement, the Guidelines form part of what produces the agreement, so also they form part of what produces the judge's decision. And it seems to me if that's going to be enough for the judge's determination, it ought to be the same for the agreement. Well, I think it's not clear that the judge needed to be considering the Guidelines in the course of deciding whether to accept the plea agreement. And Justice Breyer earlier had a colloquy with Mr. Heft about Guidelines 6B1.2, which even before Booker was a nonbinding policy statement. And so to be sure, when 3582 was enacted, the Guidelines were binding, and therefore it — they would have been expected to have played a larger role in most sentences. Scalia, but let's assume there's no plea agreement. Gannon, yes. Scalia, you have a judge who sentences post Booker Fanfan. Now, his sentence is not based on the Guidelines any more, any more than this agreement is based on the Guidelines. The Guidelines are one of the things that he must take into account and does take into account in determining the sentence. Now, if that is enough for purposes of determining whether the statute — statutory provision applies to a sentence imposed directly by a judge, it seems to me the same analysis ought to apply to a sentence imposed through a plea agreement. Well, I think that there's a different purpose that's being served by asking the 3582 C. 2 inquiry, which is asking the judge to go back and redo the aspects of his analysis that would have been different had the relevant Guideline range been changed at the time he engaged as an analysis. And so you — So you acknowledge that based on covers post Booker Fanfan sentences by the judge? Outside the context of a specific C, a specific sentence agreement under Type C, that on page 28 of our brief, we acknowledge that in most contexts it's open to contend that the sentence was based on the relevant Guidelines. Even though, even though, the Guidelines are just one of the things that have to be taken into account. It is — the test that we state in the subheading of that section of our brief is whether they are of legal consequence in the determination. Finding legal consequence is your test, Mr. Gannon. Well, our — It's not finding legal consequence post Booker. The test that we have for the overarching test is whether it is of legal consequence. And the phrase that you're talking about on page 27 of our brief, Justice Kagan, is when we know that there is something that was of binding legal consequence and was controlling, we know that that is the thing that the sentence was based on. So that's not your test. What is your test instead? Well, that is — when something literally is controlling the analysis, the parties' agreement here binds the district judge, we know that that is what the sentence is based on. There isn't any evidence. Yes, but is there some other instances in which you would say that something is based on, even though it's not, of binding legal consequence? Well, it would be of legal consequence, even if it weren't controlling. This Court has made clear, even after Booker, that under 3553A, courts still need to go through the relevant guidelines analysis. They apply the guidelines. It may turn out that the sentence turns out not to be based on the relevant guidelines. But then I'm back with Justice Scalia, because if it's only of legal consequence, not of binding legal consequence, if it's something that somebody considers rather than something that is determinative, it seems to me the same in the non-plea context and in the plea context. Well, I don't think that's true in the context of a specific sentence agreement under a Type C plea, because — and this is reinforced by the language in the policy statement, 1B1.10, which the Court last term in Dillon held is, is binding and controls what needs to be done during the sentence reduction proceeding. And it specifically refers to the guideline provisions that were applied when the defendant was sentenced. And that's something that happens in the process of the 3553A factors applicability. Why doesn't this line of questioning lead logically to the conclusion that no sentence after Booker and Fanfan is based on the guidelines? Because today, a sentencing judge can engage in the same analysis that the Sentencing Commission may engage in when it decides that a guideline range should be lowered and that that should be retroactive. The judge can do that at the time when the sentence is imposed. We roll the clock back on the crack — on the crack cocaine guidelines under the authority that judges now have under Booker and Fanfan. A judge could say, well, I see that this is the crack cocaine guideline right now, but I think it's too harsh for all the reasons that were later persuasive in lowering the range, and therefore, I'm sentencing below the range. So it seems to lead logically to the conclusion that 3582 is yet another provision of the Sentencing Reform Act that was tied to the old pre-Booker mandatory sentencing regime. And now that that's out the window with Booker and Fanfan, the whole — the whole mechanism is superfluous. Well, I understand the point that the analysis has certainly changed since Booker, but it is still the case that the defendant can appeal an error in application of the guidelines after Booker. If the judge were to — to misapply the guidelines before he engages in the analysis that you talk about, Justice Alito, that would be grounds for an appeal. In retrospect, if the judge is asked whether the sentence was based on the guidelines, he may say that particular sentence wasn't because I ended up disregarding the guidelines under 3553a. I did the analysis. I was exercising my sentencing discretion the first time around under 3553a, and the guidelines ended up not being the basis of the sentence. And that's not something that's an option in a type C plea agreement, because  I find it hard to — I find it hard to understand the analysis that would require courts to decide whether some C1c plea agreements are based on the guidelines and some are not based on the guidelines. Maybe they're all based on the guidelines, and then the obligation would be on the government to put a provision in a standard plea agreement requiring the defendant to give up the opportunity to move for a sentence reduction if the guideline range is subsequently lowered. Or maybe none of them are based on the guidelines because, for the reasons I just mentioned, this whole mechanism is now needed no longer as a result of Booker and Fanfan. Well, I think in the context of an actual specific sentence plea agreement, that's the one that we think is off the table, because that is what's going to control the sentence. And some type C plea agreements affirmatively contemplate application of the guidelines, as this one does with respect to the fine. And so when you have a plea agreement that tells the district judge you are bound to apply a guideline provision once you've accepted this agreement, we haven't taken the position that the resulting sentence there isn't based on the relevant guideline range. But that's not what's going on here. Breyer. You want us to decide this case. I completely agree with what Justice Alito is saying. Justice Scalia, that maybe the world after Booker is different. And I haven't thought that one through. But I'm thinking this case is a pre-Booker case. It isn't really. But I'm thinking it's on the cusp. So how am I to treat this case, if it's a case where the guidelines apply, if it is such a case? And I think maybe everyone here has assumed throughout it was. Am I right about that? Were you saying this is a case where the guidelines don't apply, where they are not binding? I mean, where pre-Booker doesn't count? How do you want us to take this, pre-Booker or post-Booker? Well, I think that the answer isn't different, but this is a post-Booker case. I think it is completely different regardless. So let's avoid that controversy at the moment, and you tell me whether you want me to take it pre-Booker or post-Booker. The sentencing proceeding occurred 6 months after the Booker opinion came out. If you want us to decide this post-Booker, then perhaps we should have it re-argued. If we're taking this pre-Booker, I would have thought it's QED. I mean, imagine that the Sentencing Commission, imagine that the Sentencing — it's not true, but imagine — the Sentencing Commission had written the following words, plea bargaining over sentences is abolished, as many argued they should. They write those words. Then they write the next word, exception. There is an exception, however. You are permitted to plea bargain about a sentence insofar as you argue about the range, where within the range it applies. And, of course, when you apply the guidelines, as when you always apply the guidelines here or elsewhere, departure is an unusual case. Now, suppose those were the words that the commission had written. Could — how is it possible under those circumstances you would still be arguing this sentence under the plea bargaining abolished except over where within the range is it possible you would be arguing that this is not based on the guidelines? Well, I think that had the Sentencing Commission adopted such a position and if it were binding on a sentencing, which is— Oh, it is because of A4. It used to be, because it says in the Sentencing Guidelines, judge, you will apply the guidelines, unless you find a circumstance the commission did not adequately take into account, and in respect to that, you may and must consult policy statements. Guidelines and other material. That's what it says. But take I'm right on that. Assume I'm right. You can disagree with me, and I'll look into it. Before Booker was decided, several of the circuits had already concluded that a judge could accept a type C plea agreement that had a sentence outside the range and that that wasn't a guidelines-based sentence. I want an answer to my hypothetical, because I'm trying to figure out how to think about it. And you will help me if you answer my hypothetical. I think in those circumstances, the commission effectively would have repealed type C plea agreements, because— Yes, that's right. That's what they wanted to do. Okay? Now, that's correct. But you can still have them. In your hypothetical, that's what they wanted to do. Yes. You can still have them, but they allow them only for the purpose of where within the range the sentence will lie. Okay? In those circumstances, I think that it would be fair to say that the sentence was based on the guideline range, because the agreement hadn't given any reason for the judge to leave the guideline range. Correct. Now, I would like to say, because if they wrote those words, C, agreements are abolished, but for where within the range, okay, you agree it would be based on the guidelines. Now, what I'd like you to do is to look at section 6B, whatever that is. 6B.1.2 is on the last page of it. It differs from what I just said. Well, I think it differs in two key ways. First of all, this is on the last page. It's on the last page of the government's appendix, which is 16A of our brief. And I think that it differs in two regards. First of all, it was a policy statement that even before Booker was not binding on the sentencing judge, the commission determined that this particular guideline was not binding on judges the same way other provisions of the guidelines were. Kagan. Kagan. And I thought you just told me that binding was not a part of the test anymore. Well, but the question is whether the judge even had to apply it at all, and the judge didn't need to. And the second point that I was going to get to is that, unlike the colloquy that Justice Breyer had with Mr. Heft earlier on, it doesn't say the court may accept the agreement only if the court is satisfied that it's within the guideline range. It gives the court permission to accept the agreement. This is a policy statement that gives the court permission to accept the agreement when it's within the guideline range or when there's a justifiable departure, but it does not then say that everything else is prohibited. It says only if. The words there are only if. It said, ''should accept a recommended sentence or a plea agreement requiring imposition of a specific sentence only if the court is satisfied either that such sentence is appropriate within the guideline or departure.'' You're reading a different. I am? I'm reading 6b1.3 commentary. I'm reading commentary on the policy statement. This is for 6b1.3? Yes. I'm reading the commentary on the policy statement. He's reading the commentary. I've been looking at a text of 6b1.2 itself, which leaves out the word ''only''. But I think that here, even if you go back to the pre-Booker practice, I think it was clear that judges were able to depart from the guidelines to accept a type C plea agreement that imposed a sentence that was outside the guideline range, and they and it wasn't considered an abuse of discretion. You see, that's why I'm having such a hard time. I'm having a hard time because first I put myself back in the commission days, and there the commission did want to abolish C's. And that's what it intended to do and that's what it said it did. But for what we're talking about. Now, you first raised the question of did they have the authority to do that. And I agree with you that that is a legitimate question. I made you assume it away, but I think it is a legitimate question. Now, we have the additional question of how Booker FANFAN changes that, and for what and when. You see why I'm puzzled and why I was asking you rather harshly to start with my hypothetical? I do think that this gets puzzling as you get further down, but I think that this is the simplest case. It's a narrow category of cases. We're dealing with a subset of one particular type of plea agreement. It's distinct from every other aspect of Federal sentencing. It's unlike what happens when somebody goes to trial. In those circumstances, the judge clearly has the discretion to apply the sentencing guidelines at the time of sentencing. It's different from regular type B plea agreements where the parties have come up with an agreement and the judge, notwithstanding the agreement, is still free to determine the sentence that he or she wants to determine. This is a unique — this uniquely gives a high level of certainty to the parties about the specific sentence that they negotiated. Sotomayor, I'm not in disagreement with the point you're making, but I think that going back to what had bothered Justice Alito and Justice Scalia on now that the guy lines are not mandatory, is any sentence, even under C, really based on the agreement? Because even a C agreement has to be approved by the judge. The legal consequence is not the agreement. That doesn't sentence the defendant. It's the judge's decision as to what the sentence should be, which he denotes in accepting the agreement, that binds. And I think, I may be making Justice Breyer's argument, that if under the policy statement, and it's clear what the judge did here, if the judge feels bound by the agreement or otherwise to calculate a sentence in the guideline and impose one in the guideline, how can you say that the legal effect is not the guideline sentence? Well, because I think that the relevant question for purposes of both 3582c2 and the policy statements that the Court said in Dillon controls the process of implementing 3582c2 is what did the judge do at the time of imposing the sentence. And so although it is true that the judge generally will consider how the type C specific sentence that the parties have agreed upon corresponds to a guidelines analysis at the time of deciding whether to accept the plea agreement, the relevant phrase in 1B1.10b1, which is on page 8a of the government's appendix, is that the judge is supposed to go back and look at what to only make substitutions for the corresponding guideline provisions that were applied when the defendant was sentenced. And so when you have a type C plea agreement that has a specific sentence, even under the terms of this agreement, the only thing that the judge considered when he decided the sentence was going to be 106 months with respect to the term of imprisonment was the binding plea agreement. That's what Rule 11c1c requires. Sotomayor No, because you're assuming that the agreement was automatically binding on the judge. The judge was always capable of saying at the time of sentence, I won't accept the 106, if he had calculated the guidelines and it had turned out that the guidelines call for 240 to 360, he could have said easily, no, that's so far outside of the guideline range with no justification that I'm not going to accept, impose the sentence. You can withdraw your agreement and do whatever you're going to do. And had he done that, the sentencing proceeding would have proceeded differently and it may not have even occurred right then. And I think that because under Rule 11, if he was rejecting the plea agreement and the 106 months that the parties had agreed to, he would have to give the defendant the right to withdraw the plea. At that point, the government would have been released from its obligations. The parties, the defendant could have gone to trial. He could have continued to plead guilty. The parties could have come up with a type B plea agreement. The parties may have asked for time to renegotiate a different type C agreement. We don't know what would have happened in those circumstances. And as you pointed out before, Justice Sotomayor, this is not about asking the judge to step into the shoes of the parties and renegotiate what the agreement would have been had the judge decided to reject it the first time around. Instead, 3582c2 contemplates a limited process by which the judge will reapply those provisions of the guidelines that he applied the first time around and make a substitution that's now called for by the retroactively applicable change. But here, because the judge didn't actually make that application at the time of sentencing, the judge didn't actually have to apply the drug quantity statement. Ginsburg-Goldberg. I'm not following that argument for this reason. It seems to me, if you ask what did the judge apply at the time he imposed the original sentence, well, it's got to be the guidelines, because first the agreement provides for it, then he says, I'm going to wait for the probation report so I can see what the calculation is, whether I agree with it, and then he gives him a sentence that is precisely within the guidelines. So if you ask me to describe what that sentence was of, what was it, 46 to 106 days, I say, yes, that was a guideline sentence. It was right there within the brackets that the guideline. So why wasn't it a guideline sentence? Because for purposes of the term of imprisonment, the judge was not actually applying the guidelines at that point. He did so for purposes of the fine. He ended up actually waiving the relevant fine. But the Type C plea agreement here called for the judge to apply the guidelines with respect to the fine and did not call for the judge to apply the guidelines with respect to the term of imprisonment. He knew that it was within what the PSR had calculated as the guideline range, and he concluded that that was the applicable guideline range, which he needed to do for purposes of calculating the fine and other things. But it wasn't actually the basis for the sentence. The basis for the sentence was the plea agreement that he accepted, and there it was the party's agreement, and there are all sorts of things that went into the party's agreement that the judge does not have the wherewithal to reconsider in retrospect. Ginsburg. I thought one of the things in the plea agreement was that the judge would have the right to himself calculate the guideline range. Yes. And that's specifically contemplated in Rule 11c and in the guidelines, that the judge may postpone acceptance of the plea agreement until after the pre-sentence report is prepared. And the judge did do that here, so he was aware of what the PSR recommended. But once — and had he decided that he didn't like the 106-month sentence and he wanted to preserve his sentencing discretion, the option at that point was to have rejected the plea agreement, at which point the parties would have been free to do different things. And among other things, the government could then have argued for a higher sentence within the range, could have argued that the criminal history failed to represent the seriousness of the defendant's criminal past, could have argued for an upward departure even. And — but the defendant got the benefit of the 106-month agreement, of not having the government raise any of those other arguments at that time. And now he's asking for, essentially, another bite at the apple. And we think that because the basis for the sentence was indeed the negotiation and the agreement between the parties, that the court of appeals decision was correct. Are there no further questions? Roberts. Thank you, Mr. Gannon. Mr. Heft, you have three minutes remaining. Thank you, Your Honor. Excuse me. Just a couple of points. First of all, the record here leaves no doubt that the judge based his sentence on the guidelines. The sentencing transcript specifically states that the judge, and I would like to quote this, this is at page 47 of the joint appendix, and I quote, So it's quite clear that the judge, and even in his statements of reasons, on page 95 of the joint appendix, again reaffirmed that this sentence was based on the guidelines. Now, the other point that I would like to make is that the judge, and I would like  to make is that the government acknowledges that it has carved out a very small exception to its argument that C pleas regarding specific sentences and sentencing ranges are not eligible for C2 relief. But it seems to me that reading the — taking the government's position into account, if this plea agreement had not stated 106 months, then Mr. Freeman's, under the terms of this plea agreement, in the government's view and under the government's argument of what exception exists to C pleas for purposes of 3582, Mr. Freeman would be eligible for the relief that was granted. And we would simply urge the Court in this case to adopt a rule that does not exclude specific sentences in C pleas for eligibility in 3582. Thank you. Thank you, counsel. The case is submitted.